## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GLOBAL POLICY PARTNERS, LLC** ) <br> **1701 Pennsylvania Avenue, NW** ) <br> **Suite 300** ) <br> **Washington, DC 20006,** ) <br> ) <br>  **Plaintiff,** ) <br> ) <br>  **v.** ) <br> ) <br> ) <br> **JULEANNA R. GLOVER** ) <br> **2146 Wyoming Avenue, NW** ) <br> **Washington, DC 20009,** ) <br> ) <br> **and** ) <br> ) <br> **DOE DEFENDANTS 1-10,** ) <br> ) <br>  **Defendants.** ) <br> | **Civil Action No.** _____ <br><br> **JURY TRIAL DEMANDED** |

### COMPLAINT

Plaintiff Global Policy Partners, LLC ("GPP" or "Plaintiff") brings this action against Defendant Juleanna R. Glover ("Defendant") and Doe Defendants 1-10 ("Does 1-10") (Defendant and Does 1-10 collectively, "Defendants") for multiple violations of Federal and State law arising from Defendants' unlawful surveillance of GPP's computer system and email account. In violation of Federal and State criminal law, Defendants conducted this unlawful surveillance in order to, *inter alia*, harm GPP and its Chief Operating Officer, Jeffrey C. Weiss, and benefit and obtain a competitive advantage for Defendant and her company, The Ashcroft Group, LLC (the "Ashcroft Group"). Defendants' actions violate provisions of the Federal Computer Fraud and Abuse Act (18 U.S.C. § 1030 *et. seq.*), Title III of the Omnibus Crime Control and Safe Streets Act of

1968 (18 U.S.C. § 2511 *et. seq.*), Title II of the Electronic Communications Privacy Act (the "Stored Communications Act"), 18 U.S.C. § 2707, D.C. Code §§ 23-542, 543, 544 & 554, and the common law.

In support thereof, GPP alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises out of, *inter alia*, Defendants' repeated violations of the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et. seq.*, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2511 *et. seq*, and Title II of the Electronic Communications Privacy Act/the Stored Communications Act, 18 U.S.C. § 2707  This Court has Supplemental Jurisdiction over the District of Columbia statutory and common law claims pursuant to 28 U.S.C. § 1367.

2.      Venue in this District is proper under 28 U.S.C. § 1391(b)(2) because, *inter alia*, a substantial part of the events or omissions giving rise to GPP's claims occurred in this District, including that the unlawful surveillance and interception of communications and documents occurred in this District.

3.      This Court has personal jurisdiction over Defendant because, *inter alia*, Defendant has caused tortious injury and committed crimes in this District, including the unlawful surveillance and interception of communications and documents that are the subject of this action.  In addition, Defendant resides in this District, regularly transacts business in this District, engages in a persistent course of conduct in this District, contracts to supply services in this District, and solicits business in this District.

## PARTIES

4.      GPP is a Limited Liability Corporation, organized and existing under the laws of the State of Florida, with its principal place of business located at 1701 Pennsylvania Avenue, NW, Suite 300, Washington, DC 20006.

2

5.       Defendant is an individual who resides in the District of Columbia at 2146 Wyoming Avenue, NW, Washington, DC 20009.

6.       Defendant Does 1-10 are individuals and corporations whose addresses and/or States of organization are currently unknown to GPP. Upon information and belief, Doe Defendants 1-10 also were engaged in, and are responsible for, the illegal conduct alleged herein. GPP will move to amend this Complaint if and when it learns the identities of these Defendants. Until that time, GPP's specific allegations are directed at Defendant's unlawful conduct.

## FACTUAL BACKGROUND

7.       GPP is a full service government relations and business consulting firm. The Principals of GPP, Katherine Friess Yessin and Mr. Weiss, are experienced consultants who have worked in international business and politics for decades. They bring a global network of contacts and strategic and tactical strategies to bear on behalf of their clients, including securing government contracts; finding partners and business opportunities in foreign markets for U.S. interests; arranging U.S. partners and market access for foreign entities; providing access to venture capital or other investment opportunities; providing government relations and lobbying; creating and implementing full-scale communications plans; and a myriad of other services. GPP has particular strength in the areas of tax, international trade, technology, telecommunications, counter-terrorism, security, homeland security, and defense.

8.       GPP operates under strict standards of client confidentiality, as security is paramount in these highly competitive business transactions and, particularly for the intelligence, defense, and security related projects – many of these clients operate under highly restricted, classified U.S. government contracts. This is not only for competitive reasons – when working on potential international contracts the environment is fraught with corporate and government espionage – but also for reasons of U.S. national security. As a result, GPP strictly protects and maintains the confidential and

proprietary nature of its computer system, email accounts, trade secrets, software, documents, communications, and services with passwords and other safeguards.

9.      Ms. Friess Yessin is the Chief Executive Officer, a Manager, and a Principal of GPP. Mr. Weiss is the Chief Operating Officer, a Manager, and a Principal of GPP. Together, Ms. Friess Yessin and Mr. Weiss are the only officers and Principals of GPP. Ms. Friess Yessin and Mr. Weiss also are the majority owners and, as 2 of the 3 Managers, have majority control over GPP. As such, Ms. Friess Yessin and Mr. Weiss have the authority to make decisions on behalf of GPP. Defendant is not an officer, Manager, Principal, or shareholder/member of GPP, and she had no authority to authorize or engage in the criminal unlawful surveillance that is the subject of this Complaint.

10.     Defendant is a founding Partner of the Ashcroft Group and works in its Washington, DC office. Like GPP, according to its website, the Ashcroft Group provides consulting services in the areas of homeland security, corporate governance, crisis management, and entrepreneurial ventures. The Ashcroft Group and GPP are competitors who operate in the same competitive space.

11.     At the time of the events alleged herein, upon information and belief, Defendant used an Ashcroft Group laptop and/or desktop computer to access her Ashcroft Group email account to conduct unlawful surveillance of GPP and Mr. Weiss's email communications and documents.

12.     Mr. Weiss uses a laptop computer that he uses at home and at GPP to email communications and documents of a confidential, proprietary, trade secret and privileged nature to communicate with GPP's clients, potential clients, business partners, consultants, attorneys, and others. Mr. Weiss also uses the GPP email system for personal correspondence including, but not limited to, privileged communications with his counsel. This laptop computer is protected with a GPP password.

13.     Defendant was not an authorized user of the GPP computer and email system and she did not have a GPP email account, address, or password.

14.     Mr. Weiss and Defendant were married for a number of years and were divorced on or about November 23, 2008.

15.     However, while their divorce proceedings were pending, and without GPP or Mr. Weiss's authorization or consent, Defendant broke into Mr. Weiss's GPP email account and unlawfully surveilled GPP and Mr. Weiss's confidential, proprietary, trade secret and privileged documents and communications, including very sensitive, privileged communications with Mr. Weiss's counsel regarding the divorce proceedings with Defendant.  For example, Defendant surveilled Mr. Weiss's privileged correspondence with his counsel regarding the divorce and what he would accept as a settlement.  With this privileged information, Defendant obtained a decisive, unfair advantage in the divorce proceedings.

16.     Defendant obtained this information by unlawfully installing a spyware system called "PC Pandora" ("Pandora" or the "Pandora Spyware") on Mr. Weiss's laptop computer which allowed her to unlawfully access GPP's computer system and email account.

17.     On September 29, 2007, Defendant purchased the Pandora Spyware and, upon information and belief, installed that program on Mr. Weiss's laptop computer that day or immediately thereafter.

18.     The Pandora Spyware is a Windows application used to capture and monitor computer activity.  This spyware captures full screen shot and periodic intervals, keystrokes, instant message communications, e-mails, peer-to-peer download activity, login, and web browser activity.  Pandora may be configured to send e-mail reports summarizing the captured activity to a specified e-mail address, providing transparent access to the user's activity without physical access to the system.  The software may be installed in two different modes: stealth and visible.  When installed in stealth mode, which is the default configuration, the program is not readily viewable without entering a specific set of keystrokes defined during the setup process.

19.     On or about September 29, 2007, without GPP or Mr. Weiss's authorization or consent, Defendant installed the Pandora Spyware on Mr. Weiss's laptop computer on the stealth mode and used it to capture and monitor Mr. Weiss's computer usage activity, which necessarily included intercepting GPP's confidential, proprietary, trade secret, and privileged documents and communications. Specifically, Defendant used the Pandora Spyware to capture full screen shots on periodic intervals, key strokes, instant message communications, emails, login and web browser activity and, upon information and belief, sent email reports summarizing the captured activity to an internet or web-based Hotmail email account that Defendant then accessed using her Ashcroft Group email account, providing transparent access to GPP's computer system and email account without physical access to Mr. Weiss's laptop computer.

20.     In order to further safeguard GPP's confidential, proprietary, trade secret and privileged documents and communications, Mr. Weiss changed his GPP password. However, because Defendant had unlawfully installed the Pandora Spyware which captured his keystrokes, Defendant was able to unlawfully obtain any new password and continue to unlawfully surveill GPP's computer system and email account.

21.     In addition to unlawfully intercepting GPP's confidential, proprietary, trade secret, and privileged documents and communications, Defendant intercepted and read privileged communications between Mr. Weiss and his counsel in real time during the course of the settlement negotiations, which gave Defendant a decisive, unfair advantage in the divorce proceedings.

22.     On the evening of December 11, 2007, Defendant admitted to Mr. Weiss that she had installed the Pandora Spyware on his laptop computer and had been viewing GPP's and his emails and documents "in real time for months".

23.     After this December 11, 2007 admission by Defendant, Mr. Weiss demanded that the Pandora Software be removed.

6

24.    On December 12, 2007, Defendant sent Mr. Weiss an email from her Ashcroft Group email account stating that she would come to GPP's Washington, DC office to "undo" the Pandora Spyware. Later that day, Defendant travelled to GPP's Washington, DC office, pressed approximately four keys on Mr. Weiss's laptop computer, and a Pandora logo of an eye appeared. Defendant found the menu button and clicked "uninstall", which removed the Pandora Software from Mr. Weiss's laptop computer.

25.    In order to ascertain the scope of Defendant's unlawful surveillance of GPP's computer system and email account, Mr. Weiss retained a Digital Forensic Examiner. This Digital Forensic Examiner examined Mr. Weiss's laptop computer and confirmed, as Defendant admitted, that the Pandora Spyware was previously installed and likely uninstalled on December 12, 2007.

26.    Through her unlawful surveillance, Defendant has impaired the condition, quality and value of the GPP computer system and email account and invaded GPP and Mr. Weiss's privacy. From the date of the unlawful surveillance, GPP and Mr. Weiss's personal and business communications and documents were no longer private. Further, as a result of this unlawful surveillance, GPP has been harmed in the manner in which it may safely conduct its business and has been forced to incur substantial costs associated with taking defensive measures to prevent such unlawful access in the future.

27.    Defendant's unlawful surveillance of GPP's communications and documents and the interception of information transmitted by GPP has caused GPP to expend considerable time and resources in taking preventative measures to ensure and/or minimize the possibility of such impermissible access occurring at any future date.

28.    Defendant conducted this unlawful surveillance to, *inter alia*, harm GPP and Mr. Weiss. Indeed, using very colorful language, Defendant has repeatedly threatened Mr. Weiss by phone, in person, and by email that she would "ruin" him personally, financially, and professionally (which necessarily includes ruining GPP) and

7

interfere with Mr. Weiss and GPP's existing and potential clients and investors. In one such email, Defendant threatened to meet with "one of your [GPP's] client's tomorrow" and "all of them" eventually to disparage Mr. Weiss and GPP. In other emails, Defendant threatened to "humiliate" Mr. Weiss and send disparaging information to "all your [GPP's] clients."

29.     Defendant also conducted this unlawful surveillance to, *inter alia*, obtain and use GPP's confidential, proprietary, trade secret, and privileged documents and communications for Defendant and the Ashcroft Group's competitive advantage. The Ashcroft Group and GPP both provide lobbying, communication, and consulting services in the same competitive space. Through her unlawful surveillance, Defendant had access to GPP's new business tracker which gave the status and estimated dollar amounts of GPP's potential clients. Defendant threatened and, upon information and belief, used this confidential and proprietary information to meet with GPP's existing and potential clients and investors to divert them away from GPP and/or to the Ashcroft Group, and for project ideas and leads to enrich herself and the Ashcroft Group at the expense of GPP.

30.     At her November 17-18, 2008 deposition in the divorce proceedings, Defendant admitted under oath that she, *inter alia*, purchased and installed the Pandora Spyware, conducted the unlawful surveillance alleged in this Complaint, told Mr. Weiss that she would "ruin" him socially, professionally, and financially (which necessarily includes ruining GPP), and shouted at him, "I will kill you."

31.     In addition, to the above unlawful surveillance, Defendant also placed global positioning devices on Mr. Weiss's car and cellular phone so she could track his every move.

32.     Defendant's unlawful surveillance violates Federal and State criminal law.

8

## COUNT I
### Violation of the Federal Computer Fraud and Abuse Act
### 18 U.S.C. § 1030(a)(2)(C)
### (Defendant and Does 1-10)

33.    GPP repeats and re-alleges each of the above allegations in this Complaint as though set forth fully herein.

34.    GPP maintains computers and a computer network on which it develops and stores GPP privileged, confidential, proprietary and trade secret information. GPP limits access to its computer system and email accounts by assigning usernames and passwords to all GPP authorized users. Defendants do not have GPP usernames or passwords and are not GPP authorized users.

35.    Because of the nature of GPP's business as described in this Complaint, its computers are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2)(B), as they are used in and/or affect interstate and foreign commerce, in a manner that affects interstate or foreign commerce or communication of the United States.

36.    Defendants, individually and/or collectively, intentionally accessed GPP's protected computer system and email account without consent or authorization by installing Pandora Spyware on Mr. Weiss's laptop computer, and using it to capture Mr. Weiss's keystrokes and computer usage activity, including his GPP username and password, and other communications. Defendants used this information to gain access to and surveill GPP's confidential, proprietary, trade secret, and privileged documents and communications. Defendants also used this information to gain access to and surveill Mr. Weiss's GPP e-mail account and his confidential business and personal communications including, but not limited to, communications with GPP clients and privileged communications with his counsel.

37.     On information and belief, Defendants have individually and/or collectively obtained proprietary and confidential information from GPP's protected computer system and email account.

38.     By their actions, Defendants individually and/or collectively have intentionally accessed a computer, email account and computer network without authorization, or in excess of authorization, and have thereby obtained information from a protected computer in violation of 18 U.S.C. § 1030(a)(2)(C). Upon information and belief, Defendants engaged in such activity for purposes of commercial advantage and personal financial gain and/or individually and/or collectively have caused impairment to the integrity of GPP's data, programs, systems, trade secrets, and information, and to the integrity of Mr. Weiss's work-related and personal information and legal position in his divorce proceedings against Defendant.

39.     Defendants conducted this illegal activity to harm GPP and Mr. Weiss; to obtain and use GPP's confidential, proprietary, trade secret, and privileged documents and communications for Defendant and the Ashcroft Group's competitive advantage; and to obtain for Defendant an unfair advantage in her divorce proceedings against Mr. Weiss.

40.     Defendants' illegal activity is also in violation of 18 U.S.C. § 1030(a)(6), in that, without authorization or consent, Defendants knowingly and with the intent to defraud, trafficked in, by transferring to each other and others, the password to Mr. Weiss's GPP email account, through which Defendants obtained access to GPP's computer system and email account.

41.     By their actions, Defendants individually and/or collectively have caused GPP to incur losses including the cost of loss of proprietary data, systems, information, and trade secrets, as well as the cost of responding to Defendants' individual and/or collective offenses, conducting damage assessments, restoring the data, program, system and/or information to its condition prior to Defendants' offenses, lost revenue and

10

interruption of service. GPP has suffered losses in excess of $5,000 in aggregate value as a result of Defendants' course of conduct.

42.    As a result of Defendants' individual and collective violations of 18 U.S.C. § 1030, GPP is entitled to recover economic damages, which include, but are not limited to, lost profits, lost goodwill, damage to reputation, and impairment of value to property in amounts to be proven at trial, as well as injunctive relief, and any other equitable relief that the Court deems just a proper, as provided under 18 U.S.C. § 1030(g).

43.    Defendants continue to attempt to engage in the unlawful actions alleged herein, and unless restrained and enjoined will continue to do so, causing irreparable harm to GPP. Without discovery it is impossible to fully ascertain the degree of harm as well as the amount of compensation that could afford GPP adequate relief for Defendants' continuing unlawful acts. GPP's remedy at law is, therefore, necessary, but nevertheless inadequate to compensate GPP completely for the injuries suffered, and future injuries threatened.

## COUNT II
### Violation of the Federal Computer Fraud and Abuse Act
### 18 U.S.C. § 1030(a)(4)
### (Defendant and Does 1-10)

44.    GPP repeat and re-allege each of the above allegations in this Complaint as though set forth fully herein

45    GPP maintains computers and a computer network on which it develops and stores GPP privileged, confidential, proprietary and trade secret information. GPP limits access to its computer system and email accounts by assigning usernames and passwords to all GPP authorized users. Defendants do no have GPP usernames or passwords and are not GPP authorized users.

46.      Because of the nature of GPP's business as described in this Complaint, its computers are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2)(B), as they are used in and/or affect interstate and foreign commerce, in a manner that affects interstate or foreign commerce or communication of the United States.

47.      Defendants, individually and/or collectively, knowingly and with the intent to defraud, accessed GPP's protected computer system and email account without consent or authorization by installing Pandora Spyware on Mr. Weiss's laptop computer, and using it to capture Mr. Weiss's keystrokes and computer usage activity, including his GPP username and password, and other communications. Defendants used this information to gain access to and surveill GPP's confidential, proprietary, trade secret, and privileged documents and communications. Defendants also used this information to gain access to and surveill Mr. Weiss's GPP e-mail account and his confidential business and personal communications including, but not limited to, communications with GPP clients and privileged communications with his counsel.

48.      On information and belief, Defendants have individually and/or collectively obtained proprietary and confidential information from GPP's protected computer system and email account.

49.      Defendants conducted this illegal activity to harm GPP and Mr. Weiss; to obtain and use GPP's confidential, proprietary, trade secret, and privileged documents and communications for Defendant and the Ashcroft Group's competitive advantage; and to obtain for Defendant an unfair advantage in her divorce proceedings against Mr. Weiss.

50.      By their actions, Defendants individually and/or collectively have, knowingly and with the intent to defraud GPP, accessed GPP's protected computer, computer system and/or email account without authorization or exceeding authorized access. In doing so, Defendants furthered the intended fraud, and obtained a thing of

12

value, namely, GPP's confidential and proprietary information and the GPP work-related and personal privileged communications of Mr. Weiss. Defendants have thereby obtained information from a protected computer, computer system and/or email account in violation of 18 U.S.C. § 1030(a)(4).

51.     By their actions, Defendants individually and/or collectively have caused GPP to incur losses including the cost of loss of proprietary data, systems, information, and trade secrets, as well as the cost of responding to Defendants' individual and/or collective offenses, conducting damage assessments, restoring the data, program, system and/or information to its condition prior to Defendants' offenses, lost revenue and interruption of service. GPP has suffered losses in excess of $5,000 in aggregate value as a result of Defendants' course of conduct.

52.     As a result of Defendants' individual and collective violations of 18 U.S.C. § 1030, GPP is entitled to recover economic damages, which include, but are not limited to, lost profits, lost goodwill, damage to reputation, and impairment of value to property in amounts to be proven at trial, as well as injunctive relief, and any other equitable relief that the Court deems just a proper, as provided under 18 U.S.C. § 1030(g).

53.     Defendants continue to attempt to engage in the unlawful actions alleged herein, and unless restrained and enjoined will continue to do so, causing irreparable harm to GPP. Without discovery it is impossible to fully ascertain the degree of harm as well as the amount of compensation that could afford GPP adequate relief for Defendants' continuing unlawful acts. GPP's remedy at law is, therefore, necessary, but nevertheless inadequate to compensate GPP completely for the injuries suffered, and future injuries threatened.

## COUNT III
### Violation of Prohibition on Interception and Disclosure of
### Wire, Oral, or Electronic Communications
### 18 U.S.C. § 2511(1)(a) and § 2520
### (Defendant and Does 1-10)

54.     GPP repeats and re-alleges each of the above allegations in this
Complaint as though set forth fully herein.

55.     Defendants, without consent or authorization, individually and/or
collectively intentionally intercepted, endeavored to intercept and/or procured another
person to intercept or endeavor to intercept GPP's wire and/or electronic communications
in violation of 18 U.S.C. § 2511(a).

56.     Defendants conducted this illegal activity to harm GPP and Mr. Weiss;
to obtain and use GPP's confidential, proprietary, trade secret, and privileged documents
and communications for Defendant and the Ashcroft Group's competitive advantage; and
to obtain for Defendant an unfair advantage in her divorce proceedings against Mr.
Weiss.

57.     As a result of Defendants' individual and collective violations of 18
U.S.C. § 2511, Defendants, individually and collectively, made profits.

58.     As a result of Defendants' individual and collective violations of 18
U.S.C. § 2511, GPP suffered actual damages.

59.     Specifically, GPP suffered actual damages, including the loss of
confidential and proprietary data, systems, information, and trade secrets, as well as the
pecuniary injury in the form of the costs of responding to Defendants' offenses,
conducting damage assessments, guarding against future intrusions, and incurring
attorneys' fees in responding to and protecting against further intrusions.

60.     As a result of Defendants' individual and collective violations of 18
U.S.C. § 2511, GPP is entitled to recover any profits Defendants, individually and/or
collectively, have received from their violations of 18 U.S.C. § 2511, compensatory

14

damages for any loss GPP has suffered, statutory damages as provided under 18 U.S.C. §
2520(c)(2)(B) in amounts to be proven at trial, punitive damages, and attorneys' fees and
other litigation costs.

61.     As a result of Defendants' individual and collective violations of 18
U.S.C. § 2511, GPP is entitled to such preliminary and other equitable or declaratory
relief as may be appropriate including preliminary and permanent injunctions prohibiting
Defendants from further violations of 18 U.S.C. § 2511.

**COUNT IV**
**Violation of Prohibition on Interception and Disclosure of**
**Wire, Oral, or Electronic Communications**
**18 U.S.C. § 2511(1)(b) and § 2520**
**(Defendant and Does 1-10)**

62.     GPP repeats and re-alleges each of the above allegations in this
Complaint as though set forth fully herein.

63.     Defendants, without consent or authorization, individually and/or
collectively intentionally used, endeavored to use, or procured each other, and others, to
use or endeavor to use the Pandora Spyware device to capture Mr. Weiss's keystrokes
and thereby obtain his passwords to his GPP e-mail account. Defendants then used Mr.
Weiss's password to intercept GPP and Mr. Weiss's electronic communications and
documents.

64.     The Pandora Spyware device was affixed to, or otherwise transmitted
a signal through, a wire, cable, or other like connection used in wire communication; or
Defendants knew or had reason to know that the Pandora Spyware device was sent
through the mail or transported through interstate commerce when its, or a license to use
it, was purchased by Defendant; or Defendants' use of the Pandora Spyware device
obtained, or was for the purpose of obtaining, information relating to the operation of
GPP, the operations of which affect interstate commerce; and, Defendants acted in the
District of Columbia.

65.      Defendants conducted this illegal activity to harm GPP and Mr. Weiss; to obtain and use GPP's confidential, proprietary, trade secret, and privileged documents and communications for Defendant and the Ashcroft Group's competitive advantage; and to obtain for Defendant an unfair advantage in her divorce proceedings against Mr. Weiss.

66.      As a result of Defendants' individual and collective violations of 18 U.S.C. § 2511, Defendants, individually and collectively, made profits.

67.      As a result of Defendants' individual and collective violations of 18 U.S.C. § 2511, GPP suffered actual damages.

68.      Specifically, GPP suffered actual damages, including the loss of confidential and proprietary data, systems, information, and trade secrets, as well as the pecuniary injury in the form of the costs of responding to Defendants' offenses, conducting damage assessments, guarding against future intrusions, and incurring attorneys' fees in responding to and protecting against further intrusions.

69.      As a result of Defendants' individual and collective violations of 18 U.S.C. § 2511, GPP is entitled to recover any profits Defendants, individually and/or collectively, have received from their violations of 18 U.S.C. § 2511, compensatory damages for any loss GPP has suffered, statutory damages as provided under 18 U.S.C. § 2520(c)(2)(B) in amounts to be proven at trial, punitive damages, and attorneys' fees and other litigation costs.

70.      As a result of Defendants' individual and collective violations of 18 U.S.C. § 2511, GPP is entitled to such preliminary and other equitable or declaratory relief as may be appropriate including preliminary and permanent injunctions prohibiting Defendants from further violations of 18 U.S.C. § 2511.

**COUNT V**
**Violation of Prohibition on Interception and Disclosure of**
**Wire, Oral, or Electronic Communications**
**18 U.S.C. § 2511(1)(c) and § 2520**
**(Defendant and Does 1-10)**

71.     GPP repeats and re-alleges each of the above allegations in this Complaint as though set forth fully herein.

72.     Defendants, without consent or authorization, intentionally disclosed to Defendant's counsel and others the contents of GPP's wire and/or electronic communications, knowing or having reason to know that the information was obtained through the interception of a wire and/or electronic communication in violation of 18 U.S.C. § 2511(c).

73.     Defendants conducted this illegal activity to harm GPP and Mr. Weiss; to obtain and use GPP's confidential, proprietary, trade secret, and privileged documents and communications for Defendant and the Ashcroft Group's competitive advantage; and to obtain for Defendant an unfair advantage in her divorce proceedings against Mr. Weiss.

74.     As a result of Defendants' individual and collective violations of 18 U.S.C. § 2511, they made profits.

75.     As a result of Defendants' individual and collective violations of 18 U.S.C. § 2511, GPP has suffered actual damages.

76.     Specifically, GPP suffered actual damages, including the loss of confidential and proprietary data, systems, information, and trade secrets, as well as the pecuniary injury in the form of the costs of responding to Defendants' offenses, conducting damage assessments, guarding against future intrusions, and incurring attorneys' fees in responding to and protecting against further intrusions.

77.     As a result of Defendants' individual and collective violations of 18 U.S.C. § 2511, GPP is entitled to recover any profits Defendants received from their

17

violations of 18 U.S.C. § 2511, compensatory damages for any loss GPP suffered, statutory damages as provided under 18 U.S.C. § 2520(c)(2)(B) in amounts to be proven at trial, punitive damages, and attorneys' fees and other litigation costs.

78.    As a result of Defendants' individual and collective violations of 18 U.S.C. § 2511, GPP is entitled to such preliminary and other equitable or declaratory relief as may be appropriate including preliminary and permanent injunctions prohibiting Defendants from further violations of 18 U.S.C. § 2511.

### COUNT VI
**Violation of Prohibition on Interception and Disclosure of
Wire, Oral, or Electronic Communications
18 U.S.C. § 2511(1)(d) and § 2520
(Defendant and Does 1-10)**

79.    GPP repeats and re-alleges each of the above allegations in this Complaint as though set forth fully herein.

80.    Defendants, without consent or authorization, individually and/or collectively, intentionally used, endeavored to use, or procured another to use, the contents of GPP's wire and/or electronic communications, including confidential and proprietary data, systems, information, and trade secrets belonging to GPP, to gain a competitive advantage over GPP, to harm GPP and Mr. Weiss, and for the benefit of Defendant's legal position in her divorce proceedings against Mr. Weiss and otherwise. Defendants used the contents of the wire and/or electronic communications knowing or having reason to know that the information was obtained through the interception of a wire and/or electronic communication, in violation of this subsection.

81.    Defendants conducted this illegal activity to harm GPP and Mr. Weiss; to obtain and use GPP's confidential, proprietary, trade secret, and privileged documents and communications for Defendant and the Ashcroft Group's competitive advantage; and to obtain for Defendant an unfair advantage in her divorce proceedings against Mr. Weiss.

18

82.    As a result of Defendants' individual and collective violations of 18 U.S.C. § 2511, they made profits.

83.    As a result of Defendants' individual and collective violations of 18 U.S.C. § 2511, GPP has suffered actual damages.

84.    Specifically, GPP suffered actual damages, including the loss of confidential and proprietary data, systems, information, and trade secrets, as well as the pecuniary injury in the form of the costs of responding to Defendants' offenses, conducting damage assessments, guarding against future intrusions, and incurring attorneys' fees in responding to and protecting against further intrusions.

85.    As a result of Defendants' individual and collective violations of 18 U.S.C. § 2511, GPP is entitled to recover any profits Defendants received from their violations of 18 U.S.C. § 2511, compensatory damages for any loss GPP suffered, statutory damages as provided under 18 U.S.C. § 2520(c)(2)(B) in amounts to be proven at trial, punitive damages, and attorneys' fees and other litigation costs.

86.    As a result of Defendants' individual and collective violations of 18 U.S.C. § 2511, GPP is entitled to such preliminary and other equitable or declaratory relief as may be appropriate including preliminary and permanent injunctions prohibiting Defendant from further violations of 18 U.S.C. § 2511.

**COUNT VII**
**Violation of Prohibition on Interception and Disclosure of**
**Wire, Oral, or Electronic Communications**
**18 U.S.C. § 2512(1)(b) and § 2520**
**(Defendant and Does 1-10)**

87.    GPP repeats and re-alleges each of the above allegations in this Complaint as though set forth fully herein.

88.    Defendants, without consent or authorization, individually and/or collectively, manufactured, assembled, possessed, and/or sold the Pandora Spyware device, knowing or having reason to know that its design renders it primarily useful for

the purpose of the surreptitious interception of wire, oral or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce.

89.     Using the passwords and other keystrokes detected by the Pandora Spyware device, Defendants surreptitiously intercepted the contents of GPP's wire and/or electronic communications, including confidential and proprietary data, systems, information, and trade secrets belonging to GPP.

90.     Defendants conducted this illegal activity to harm GPP and Mr. Weiss; to obtain and use GPP's confidential, proprietary, trade secret, and privileged documents and communications for Defendant and the Ashcroft Group's competitive advantage; and to obtain for Defendant an unfair advantage in her divorce proceedings against Mr. Weiss.

91.     As a result of Defendants' individual and collective violations of 18 U.S.C. § 2512, they made profits.

92.     As a result of Defendants' individual and collective violations of 18 U.S.C. § 2512, GPP has suffered actual damages.

93.     Specifically, GPP suffered actual damages, including the loss of confidential and proprietary data, systems, information, and trade secrets, as well as the pecuniary injury in the form of the costs of responding to Defendants' offenses, conducting damage assessments, guarding against future intrusions, and incurring attorneys' fees in responding to and protecting against further intrusions.

94.     As a result of Defendants' individual and collective violations of 18 U.S.C. § 2512, GPP is entitled to recover any profits Defendants received from their violations of 18 U.S.C. § 2512, compensatory damages for any loss GPP suffered, statutory damages as provided under 18 U.S.C. § 2520(c)(2)(B) in amounts to be proven at trial, punitive damages, and attorneys' fees and other litigation costs.

95.    As a result of Defendants' individual and collective violations of 18 U.S.C. § 2512, GPP is entitled to such preliminary and other equitable or declaratory relief as may be appropriate including preliminary and permanent injunctions prohibiting Defendant from further violations of 18 U.S.C. § 2512.

## COUNT VIII
### Violation of Prohibition on Stored Wire and Electronic Communications and Transactional Records Access
### 18 U.S.C. § 2701(a)(1) and 18 U.S.C. § 2707
### (Defendant and Does 1-10)

96.    GPP repeats and re-alleges each of the above allegations in this Complaint as though set forth fully herein.

97.    Defendants willfully and intentionally accessed, without consent or authorization, the GPP computer system, GPP-owned confidential and proprietary documents, data, trade secrets and other information, and Mr. Weiss's GPP email account, documents, and emails on that system.

98.    As previously described in this Complaint, the GPP computer system is a facility through which an electronic communication service is provided within the meaning of 18 U.S.C. § 2701 *et seq*.

99.    Defendants conducted this illegal activity to harm GPP and Mr. Weiss; to obtain and use GPP's confidential, proprietary, trade secret, and privileged documents and communications for Defendant and the Ashcroft Group's competitive advantage; and to obtain for Defendant an unfair advantage in her divorce proceedings against Mr. Weiss.

100.    None of the Defendants are the people or entities that provide the electronic communications service. In addition, the communications accessed and obtained by Defendants were not of, by, or intended for Defendants. Finally, none of Defendants' conduct was authorized in Sections 2703, 2704 or 2518 of Title 18 of the U.S. Code.

21

101.    Pursuant to 18 U.S.C. § 2707, Defendants are civilly liable to GPP for actual damages, statutory damages, punitive damages, and attorneys' fees and cost for their violations of this section.

102.    Specifically, GPP suffered actual damages, including the loss of confidential and proprietary data, systems, information, and trade secrets, as well as the pecuniary injury in the form of the costs of responding to Defendants' offenses, conducting damage assessments, guarding against future intrusions, and incurring attorneys' fees in responding to and protecting against further intrusions.

103.    As a result of Defendants' individual and collective violations of 18 U.S.C. § 2701 et seq, GPP is entitled to such preliminary and other equitable or declaratory relief as may be appropriate including preliminary and permanent injunctions prohibiting Defendants from further violations of 18 U.S.C. § 2701 et seq.

## COUNT IX
**Violation of Prohibition on Stored Wire and Electronic Communications and Transactional Records Access
18 U.S.C. § 2701(a)(2) and 18 U.S.C. § 2707
(Defendant and Does 1-10)**

104.    GPP repeats and re-alleges each of the above allegations in this Complaint as though set forth fully herein.

105.    Defendants, without consent or authorization, or intentionally exceeding authorization, willfully and intentionally accessed the GPP computer system by installing Pandora Spyware on Mr. Weiss's laptop computer, and using it to capture Mr. Weiss's keystrokes and computer usage activity, including his GPP username and password, and other communications. Defendants used Mr. Weiss's GPP-provided user name and password to access the GPP system and to access Mr. Weiss's GPP email account. In doing so, Defendants obtained access to electronic communications while the communications were in electronic storage in GPP's system and obtained, or prevented

22

authorized access to a wire or electronic communications while it was in electronic storage.

106.     As previously described in this Complaint, the GPP computer system is a facility through which an electronic communication service is provided within the meaning of 18 U.S.C. § 2701 *et seq.*

107.     Defendants conducted this illegal activity to harm GPP and Mr. Weiss; to obtain and use GPP's confidential, proprietary, trade secret, and privileged documents and communications for Defendant and the Ashcroft Group's competitive advantage; and to obtain for Defendant an unfair advantage in her divorce proceedings against Mr. Weiss.

108.     None of the Defendants are the people or entities that provide the electronic communications service. In addition, the communications accessed and obtained by Defendants were not of, by, or intended for Defendants. Finally, none of Defendants' conduct was authorized in Sections 2703, 2704 or 2518 of Title 18 of the U.S. Code.

109.     Defendants obtained access to electronic communications while they were in electronic storage, in the GPP computer network and in Mr. Weiss's GPP email account, in violation of 18 U.S.C. § 2701.

110.     Pursuant to 18 U.S.C. § 2707, Defendants are civilly liable to GPP for actual damages, statutory damages, punitive damages, and attorneys' fees and costs for their violations of this section.

111.     Specifically, GPP suffered actual damages, including the loss of confidential and proprietary data, systems, information, and trade secrets, as well as the pecuniary injury in the form of the costs of responding to Defendants' offenses, conducting damage assessments, guarding against future intrusions, and incurring attorneys' fees in responding to and protecting against further intrusions.

23

112.    As a result of Defendants' individual and collective violations of 18

U.S.C. § 2701 *et seq.*, GPP is entitled to such preliminary and other equitable or

declaratory relief as may be appropriate including preliminary and permanent injunctions

prohibiting Defendants from further violations of 18 U.S.C. § 2701 *et seq.*

## COUNT X
### Violation of Prohibition on Interception of Wire and Oral Communications
### D.C. Code § 23-542(a)(1) and § 23-554
### (Defendant and Does 1-10)

113.    GPP repeats and re-alleges each of the above allegations in this

Complaint as though set forth fully herein.

114.    E-mail correspondence, including documents attached to e-mail

correspondence, constitutes a "wire" communication within the meaning of D.C. Code §

23-541, because such communication was made in whole or in part through the use of

facilities for the transmission of communications by the aid of wire, cable, or other like

connection between the point of origin and the point of reception furnished or operated

by any person engaged as a common carrier in providing or operating such facilities.

115.    Defendants, without consent or authorization, individually and/or

collectively, willfully intercepted, endeavored to intercept and/or procured another to

intercept or endeavor to intercept GPP's wire communications from GPP's computer

network and Mr. Weiss's GPP email account, by use of the Pandora Spyware previously

described in this Complaint.

116.    Defendants conducted this illegal activity to harm GPP and Mr. Weiss;

to obtain and use GPP's confidential, proprietary, trade secret, and privileged documents

and communications for Defendant and the Ashcroft Group's competitive advantage; and

to obtain for Defendant an unfair advantage in her divorce proceedings against Mr.

Weiss.

117.    None of Defendants are an operator of a switchboard, or an officer,

agent or employee of a communication carrier as described in D.C. Code § 23-542(b)(1);

nor are any of Defendants acting under color of law as described in D.C. Code § 23-542(b)(2); nor are Defendants a party to any of the communications that were intercepted; nor did any party to the intercepted communications give consent to such interception as described in D.C. Code § 23-542(b)(3).

118.    As a result of Defendants' individual and collective violations of D.C. Code § 23-542(a)(1), GPP suffered actual damages.

119.    Specifically, GPP suffered actual damages, including the loss of confidential and proprietary data, systems, information, and trade secrets, as well as the pecuniary injury in the form of the costs of responding to Defendants' offenses, conducting damage assessments, guarding against future intrusions, and incurring attorneys' fees in responding to and protecting against further intrusions.

120.    As a result of Defendants' individual and collective violations of D.C. Code § 23-542(a)(1), GPP is entitled to recover actual damages for any loss GPP suffered, other damages as provided under of D.C. Code § 23-554 in amounts to be proven at trial, punitive damages, and attorneys' fees and other litigation costs.

121.    As a result of Defendants' individual and collective violations of D.C. Code § 23-542(a)(1), GPP is entitled to such preliminary and other equitable or declaratory relief as may be appropriate including preliminary and permanent injunctions prohibiting Defendants from further violations of D.C. Code § 23-542(a)(1).

**COUNT XI**
**Violation of Prohibition on Interception of Wire and Oral Communications**
**D.C. Code § 23-542(a)(2) and § 23-554**
**(Defendant and Does 1-10)**

122.    GPP repeats and re-alleges each of the above allegations in this Complaint as though set forth fully herein.

123.    E-mail correspondence, including documents attached to e-mail correspondence, constitutes a "wire" communication within the meaning of D.C. Code § 23-541, because such communication was made in whole or in part through the use of

facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities.

124.    Defendants, without consent or authorization, individually and/or collectively, intentionally disclosed, or endeavored to disclose, to each other and to other persons, the contents of GPP's wire communications from GPP's computer network and Mr. Weiss's GPP email account, by use of the Pandora Spyware previously described in this Complaint.

125.    Defendants knew or had reason to know that this information was obtained through the interception of a wire communication, which methods have been described throughout this Complaint.

126.    Defendants conducted this illegal activity to harm GPP and Mr. Weiss; to obtain and use GPP's confidential, proprietary, trade secret, and privileged documents and communications for Defendant and the Ashcroft Group's competitive advantage; and to obtain for Defendant an unfair advantage in her divorce proceedings against Mr. Weiss.

127.    None of Defendants are an operator of a switchboard, or an officer, agent or employee of a communication carrier as described in D.C. Code § 23-542(b)(1); nor are any of Defendants acting under color of law as described in D.C. Code § 23-542(b)(2); nor are Defendants a party to any of the communications that were intercepted; nor did any party to the intercepted communications give consent to such interception as described in D.C. Code § 23-542(b)(3).

128.    As a result of Defendants' individual and collective violations of D.C. Code § 23-542(a)(2), GPP suffered actual damages.

129.    Specifically, GPP suffered actual damages, including the loss of confidential and proprietary data, systems, information, and trade secrets, as well as the pecuniary injury in the form of the costs of responding to Defendants' offenses,

26

conducting damage assessments, guarding against future intrusions, and incurring attorneys' fees in responding to and protecting against further intrusions.

130.    As a result of Defendants' individual and collective violations of D.C. Code § 23-542(a)(2), GPP is entitled to recover actual damages for any loss GPP suffered, other damages as provided under D.C. Code § 23-554, in amounts to be proven at trial, punitive damages, and attorneys' fees and other litigation costs.

131.    As a result of Defendants' individual and collective violations of D.C. Code § 23-542(a)(2), GPP is entitled to such preliminary and other equitable or declaratory relief as may be appropriate including preliminary and permanent injunctions prohibiting Defendants from further violations of D.C. Code § 23-542(a)(2).

**COUNT XII**
**Violation of Prohibition on Interception of Wire and Oral Communications**
**D.C. Code § 23-542(a)(3) and § 23-554**
**(Defendant and Does 1-10)**

132.    GPP repeats and re-alleges each of the above allegations in this Complaint as though set forth fully herein.

133.    E-mail correspondence, including documents attached to e-mail correspondence, constitutes a "wire" communication within the meaning of D.C. Code § 23-541, because such communication was made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities.

134.    Defendants, without consent or authorization, individually and/or collectively, intentionally used, endeavored to use, or procured another to use, the contents of GPP's wire communications from GPP's computer network and Mr. Weiss's GPP email account, by use of the Pandora Spyware previously described in this Complaint.

135.    Defendants used the contents of the wire or electronic communications knowing or having reason to know that the information was obtained through the interception of a wire and/or electronic communication in violation of D.C. Code § 23-542(a)(3).

136.    Defendants conducted this illegal activity to harm GPP and Mr. Weiss; to obtain and use GPP's confidential, proprietary, trade secret, and privileged documents and communications for Defendant and the Ashcroft Group's competitive advantage; and to obtain for Defendant an unfair advantage in her divorce proceedings against Mr. Weiss.

137.    None of Defendants are an operator of a switchboard, or an officer, agent or employee of a communication carrier as described in D.C. Code § 23-542(b)(1); nor are any of Defendants acting under color of law as described in D.C. Code § 23-542(b)(2); nor are Defendants a party to any of the communications that were intercepted; nor did any party to the intercepted communications give consent to such interception as described in D.C. Code § 23-542(b)(3).

138.    As a result of Defendants' individual and collective violations of D.C. Code § 23-542(a)(3), GPP suffered actual damages.

139.    Specifically, GPP suffered actual damages, including the loss of confidential and proprietary data, systems, information, and trade secrets, as well as the pecuniary injury in the form of the costs of responding to Defendants' offenses, conducting damage assessments, guarding against future intrusions, and incurring attorneys' fees in responding to and protecting against further intrusions.

140.    As a result of Defendants' individual and collective violations of D.C. Code § 23-542(a)(3), GPP is entitled to recover actual damages for any loss GPP suffered, other damages as provided under D.C. Code § 23-554 in amounts to be proven at trial, punitive damages, and attorneys' fees and other litigation costs.

141.    As a result of Defendants' individual and collective violations of D.C. Code § 23-542(a)(3), GPP is entitled to such preliminary and other equitable or declaratory relief as may be appropriate including preliminary and permanent injunctions prohibiting Defendants from further violations of D.C. Code § 23-542(a)(3).

**COUNT XIII**
**Violation of Prohibition on Interception of Wire and Oral Communications**
**D.C. Code § 23-543(a)(1) and § 23-554**
**(Defendant and Does 1-10)**

142.    GPP repeats and re-alleges each of the above allegations in this Complaint as though set forth fully herein.

143.    E-mail correspondence, including documents attached to e-mail correspondence, constitutes a "wire" communication within the meaning of D.C. Code § 23-541, because such communication was made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities.

144.    Defendant willfully possessed the Pandora Spyware, which is an intercepting device, the design of which renders it primarily useful for the purpose of the surreptitious interception of a wire or oral communication.

145.    Defendants Does 1-10 willfully possessed, sold, distributed and/or manufactured Pandora Spyware, which is an intercepting device, the design of which renders it primarily useful for the purpose of the surreptitious interception of a wire or oral communication.

146.    Defendants used the Pandora Spyware device to intercept the wire communications of GPP and Mr. Weiss.

147.    Defendants conducted this illegal activity to harm GPP and Mr. Weiss; to obtain and use GPP's confidential, proprietary, trade secret, and privileged documents and communications for Defendant and the Ashcroft Group's competitive advantage; and to obtain for Defendant an unfair advantage in her divorce proceedings against Mr. Weiss.

148.    None of Defendants are a communication common carrier, or a person as described in D.C. Code § 23-542(b)(2).

149.    As a result of Defendants' individual and collective violations of D.C. Code § 23-543, GPP suffered actual damages.

150.    Specifically, GPP suffered actual damages, including the loss of confidential and proprietary data, systems, information, and trade secrets, as well as the pecuniary injury in the form of the costs of responding to Defendants' offenses, conducting damage assessments, guarding against future intrusions, and incurring attorneys' fees in responding to and protecting against further intrusions.

151.    As a result of Defendants' individual and collective violations of D.C. Code § 23-543, GPP is entitled to recover actual damages for any loss GPP  suffered, other damages as provided under D.C. Code § 23-554 in amounts to be proven at trial, punitive damages, and attorneys' fees and other litigation costs.

152.    As a result of Defendants' individual and collective violations of D.C. Code § 23-543, GPP is entitled to such preliminary and other equitable or declaratory relief as may be appropriate including preliminary and permanent injunctions prohibiting Defendants from further violations of D.C. Code § 23-543.

## COUNT XIV
### Violation of Prohibition on Interception of Wire and Oral Communications
### D.C. Code § 23-544 and § 23-554
### (Defendant and Does 1-10)

153.    GPP repeats and re-alleges each of the above allegations in this Complaint as though set forth fully herein.

154.    Defendants possessed, used, sold, and/or distributed Pandora Spyware, which is an intercepting device, the design of which renders it primarily useful for the purpose of the surreptitious interception of a wire or oral communication, in the course of violating D.C. Code § 23-542 and § 23-543.

155.    As a result of Defendants' individual and collective violations of D.C. Code § 23-542, § 23-543, and § 23-544, GPP suffered actual damages.

156.    Specifically, GPP suffered actual damages, including the loss of confidential and proprietary data, systems, information, and trade secrets, as well as the pecuniary injury in the form of the costs of responding to Defendants' offenses, conducting damage assessments, guarding against future intrusions, and incurring attorneys' fees in responding to and protecting against further intrusions.

157.    As a result of Defendants' individual and collective violations of D.C. Code § 23-542, § 23-543, and § 23-544, GPP is entitled to recover actual damages for any loss GPP  suffered, other damages as provided under D.C. Code § 23-554 in amounts to be proven at trial, punitive damages, and attorneys' fees and other litigation costs.

158.    As a result of Defendants' individual and collective violations of D.C. Code § 23-542, § 23-543, and § 23-544, GPP is entitled to such preliminary and other equitable or declaratory relief as may be appropriate including preliminary and permanent injunctions prohibiting Defendants from further violations of D.C. Code § 23-544.

## COUNT XV
### Trespass to Chattels
### (Defendant and Does 1-10)

159.    GPP repeats and re-alleges each of the above allegations in this Complaint as though set forth fully herein.

160.    The GPP email system and computer network are the property of GPP.

161.    Defendants, individually and collectively, without consent or authorization, have intentionally and repeatedly obtained access to, and made use of, GPP's email system and computer network to view proprietary and confidential information, in the possession of GPP, for Defendant and the Ashcroft Group's economic benefit.

162.    Defendants, individually and collectively, intentionally used and/or intermeddled with the property of GPP, by accessing its email system and computer network without authorization.

163.    Defendants' use and intermeddling with the property of GPP caused damages to GPP's computer system and email account, by compromising the integrity of its security, and by the viewing of its proprietary and confidential information by Defendants.

164.    In addition, Defendants' wrongful exercise of dominion over GPP's email system and computer network has deprived GPP of its legitimate use of its commercially valuable system.

165.    Under District of Columbia law, Defendants' conduct constitutes trespass to chattel.

166.    As a result of Defendants' trespass to chattels, GPP has suffered and will continue to suffer irreparable injury and pecuniary damages. GPP's damages include not only pecuniary injury, but also the loss of confidential and proprietary information as well as the cost of ensuring against future intrusions. Unless enjoined by this Court, Defendants will continue these acts of trespass, thereby causing GPP irreparable harm.

167.      In addition to actual and compensatory damages, Defendants' individual and collective acts of trespass have been undertaken intentionally, with malice, oppression and fraud, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others from engaging in similar conduct.

## PRAYER FOR RELIEF

WHEREFORE, GPP prays for the following relief:

1.      That judgment be entered in its favor granting preliminary and permanent injunctive relief against Defendants, their officers, agents, servants, employees, and attorneys, and all those in active concert or participation with them who receive actual notice of any Order, enjoining them directly or indirectly from:

      a.   Intercepting any communications or documents from the GPP computer network or Mr. Weiss's GPP email account and/or any other email account held by GPP;

      b.   Obtaining any communications or documents in electronic storage from the GPP computer network or Mr. Weiss's GPP email account and/or any other email account held by GPP;

      c.   Using any communications or documents from the GPP computer network or Mr. Weiss's GPP email account and/or any other email account held by GPP;

      d.   Disclosing the contents of any communications or documents from the GPP computer network or Mr. Weiss's GPP email account and/or any other email account held by GPP;

      e.   Surveilling any communications or documents from the GPP computer network or Mr. Weiss's GPP email account and/or any other email account held by GPP;

      f.   Acquiring, compiling, using, disclosing, or transferring any proprietary, confidential, financial, privileged or personal information of GPP and/or Mr. Weiss;

      g.   Otherwise obtaining, without authorization, any information, communications, or documents from the GPP computer network or Mr. Weiss's GPP email account and/or any other email account held by GPP;

2.      That judgment be entered in its favor awarding GPP statutory, actual/compensatory, proximate, and punitive damages based on Defendants' violations of the Federal Computer Fraud and Abuse Act (18 U.S.C. §1030 *et. seq*.), Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. § 2511 *et. seq*.), Title II of the Electronic Communications Privacy Act (the Stored Communications Act), 18 U.S.C. § 2701 *et seq*., D.C. Code §§ 23-542, 543, 544 & 554, and the common law, in excess of $1,000,000;

3.      That judgment be entered in its favor awarding GPP all its attorneys' fees and costs associated with prosecuting this action;

4.      Pre and post-judgment interest; and

5.      That the Court grant such other and further equitable and legal relief that the Court may deem just and appropriate.

## JURY DEMAND

GPP hereby demands a trial by jury of all claims so triable.

Dated: August 5, 2009                    Respectfully Submitted,

**PLAINTIFF**
By Counsel

Stephen L. Neal, Jr., D.C. Bar No. 441405
Bernard J. DiMuro, D.C. Bar No. 393020
Stacey Rose Harris, D.C. Bar No. 486358
DiMuroGinsberg, P.C.
908 King Street, Suite 200
Alexandria, VA 22314
Phone: (703) 684-4333
Fax: (703) 548-3181
E-Mails: sneal@dimuro.com;
bdimuro@dimuro.com;
sharris@dimuro.com

*Counsel for Plaintiff*